[Crim. No. 12493.   Second Dist., Div. One.   Mar. 14, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN CLARENCE WARD, Defendant and Appellant.

Gilbert F. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David W. Halpin, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of murder.

In an information filed in Los Angeles on March 29, 1965, defendant was charged with murdering Susan Melody Payne on February 28, 1965. On April 1, 1965, defendant pleaded not guilty. On defendant's motion he was examined pursuant to section 1871, Code of Civil Procedure, as to his mental status, alcoholic and nonalcoholic induced EEG, psychological and psychiatric testing by Doctor Miller. After many continuances granted at the request of defendant, on November 8, 1965, defendant withdrew his plea of not guilty to murder and pleaded guilty to murder. The defendant personally and

all counsel stipulated to waive trial by jury as to the degree of the crime. Pursuant to the stipulation the judge was to consider among other things the testimony taken at the preliminary hearing, other testimony to be introduced by both sides, statement of defendant made to the arresting officers, report of Doctor Miller, testimony of Doctor Miller, and further the exhibits received in the preliminary hearing were to be received subject to the right to further objection. The court found that the statement of defendant to the arresting officer was freely and voluntarily made with full protection of all of his constitutional rights. At the further hearing photographs, coroner's reports and sketches, a hotsheet, sweater, a glove, shoes, statement of defendant and other items were received into evidence. Additional hearings were held and the court determined the guilt to be in the first degree and defendant was sentenced to the state prison.

A timely notice of appeal was filed on December 20, 1965. The prosecution moved to dismiss the appeal upon the ground, among other things, that there was a failure to comply with the provisions of section 1237.5, Penal Code. The motion to dismiss was granted by this court. The Supreme Court in *People* v. *Ward*, 66 Cal.2d 571 [58 Cal.Rptr. 313, 426 P.2d 881] held that the section in question did not apply to the facts in this case and denied the motion to dismiss the appeal.

A résumé of some of the facts is as follows: Susan Payne, the victim of defendant's crime, was born January 15, 1952, and was under the age of 14 years at the time of her death. The victim's parents (not the victim), defendant and his wife and others attended a party the night before the killing. Ward, according to his statement, arrived at the party about 7:30 p.m. His wife stated that Ward arrived about 9 p.m. Ward left the party about midnight and drove away in the family car. William Payne, the victim's brother, had already left the party by that time. Ward drove directly to the Payne home arriving there at about 1 a.m. at which time he was not drunk; however, he had been drinking. William Payne arrived at the Payne home between 1:30 a.m. and 2 a.m. William Payne and defendant were together from this time until they returned to the party about 2:30 a.m.

During the visit to the Payne home defendant "did something to her fingers" and the victim screamed. Later on in the same visit defendant wrapped his arms around Susan and picked her up in what was described as a "bear hug." Susan asked him to stop.

Ward left the party around 3:30 a.m. with his family. The Paynes left the party around 4:10 a.m. and returned to their home where the victim's father discovered the body of Susan.

Defendant made out a 40-page statement to deputy sheriffs after he was fully advised of his constitutional rights. For 20 pages of the statement defendant recalled events, such as the time he went to the party, how he was dressed, who was present at the party, the midnight visit to the Payne house, his attack of nausea after returning home from the party and denying any implication in the crime. He denied ownership of a red sweater found at the scene of the killing. Ward then admitted that he owned the sweater. He then stated that after going home from the party he went to his back door, exited and walked around to the victim's house and entered through the front door. He inspected the bedrooms, saw the victim, lying asleep in bed, saw no one else in the house, went to the kitchen where he took a glove from a closet, put the glove on, took a hatchet from a closet and then entered the child's bedroom. He stated that he shook the victim to awaken her and she sat up and screamed, whereupon he repeatedly hit her with the hatchet or ax. Then he recounted his escape route and how he disposed of the glove and the ax.

The autopsy surgeon testified that he saw 20 lacerations and tears on the head of the victim and that her teeth were broken. He further testified that one laceration involving the bridge of the nose, the left cheek and left eye socket (collapsed) had entered a depth of about three inches into the facial structure and would alone have been fatal.

Defendant said he was intoxicated at the time he left the party to go home; however, he made no statement with reference to the amount or type of liquor which he had consumed.

The victim's father testified that defendant at the party seemed to be enjoying himself but that he, defendant, did not appear to be acting like people he had seen who were drunk. Another witness stated that defendant had been drinking, but that he was not drunk. The host of the party testified that defendant was not drinking excessively and that he saw him take two or three beers at the party.

Some of defendant's witnesses, such as his wife and mother, said defendant was drunk. No defense witness testified with reference to any amount of liquor defendant consumed.

Doctor Miller appointed by the court made a written report stating his conclusions. At the time of the examination, defendant told the doctor that he had no recall of the details

of the crime. Later however the doctor learned that prior to the time of his examination of defendant, defendant had made a detailed statement to officers. With this the doctor at the time of trial considered defendant's lack of recall at the time of the medical examination a defensive measure and amended his conclusion accordingly, saying, in effect, that it was possible that defendant was legally sane at the time of the murder and that it was possible that he was legally insane at the time in question. The doctor further stated that as a general rule the greater detail an individual recalls, the greater the likelihood that he is not intoxicated or under the influence, and the greater the likelihood of premeditation and plan for the crime. The doctor stated frankly that his conclusions in the case were not conclusive but represented only a recitation of a number of possibilities.

■ The judge found (1) that defendant, despite his consumption of some alcohol prior to the murder, had the mental capacity to form the specific intent to kill, to deliberate and to premeditate and to arouse the lust or passion of himself or of a child under the age of 14 years, in this case Susan Payne. (2) That defendant was not intoxicated to such an extent or to such a degree that he was incapable of forming a specific intent to arouse the lust or passion of a child under the age of 14 years. (3) That defendant was not so intoxicated that he could not form the specific intent to commit great bodily injury or to commit an assault with a deadly weapon. (4) That defendant was not so intoxicated that he was incapable of deliberating or premeditating the killing of Susan Payne. The court thereupon properly concluded that under several different theories defendant was guilty of murder in the first degree beyond any reasonable doubt.

Appellant now asserts that under the *Wells-Gorshen* rule with reference to diminished capacity, he should have been convicted of second degree murder.

■ Here the findings are in effect a determination that appellant was in the process of a violation of section 288, Penal Code, at the time he committed the killing. Such a killing constitutes a felony murder under section 189, Penal Code, and for this reason constitutes murder in the first degree.

■ The *Wells-Gorshen* rule comes into being in a case other than one involving the felony-murder rule. (See *People v. Ford*, 65 Cal.2d 41, 54 [52 Cal.Rptr. 228, 416 P.2d 132].)

■ The judge in this case concluded from sufficient evi-

dence that appellant had the mental capacity to form the specific intent necessary to felony murder in the perpetration of a violation of section 288, Penal Code.

Assuming even that the felony-murder rule does not apply to appellant under the circumstances, he is nevertheless clearly guilty of murder in the first degree. Appellant in attempting to invoke the diminished capacity rule lied to his own doctor, so to speak, with reference to his recall of events and caused the doctor to change his opinion radically upon ascertaining that he was relying upon appellant's admittedly untruthful statements as the basis for his opinion. The judge was the trier of fact; he obviously disbelieved the appellant.

The appellant admitted by his plea of guilty every element of the crime and this is the equivalent of a conviction. Thus appellant conceded by his plea that he had unlawfully killed the victim with malice aforethought.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.